## STATE v. KALLAS et al.

No. 6044.   Decided October 4, 1939.   (94 P. 2d 414.)

496

498

*E. A. Rogers* and *Harley W. Gustin,* both of Salt Lake City, for appellants.

*Joseph Chez,* Atty. Gen., *Zelph S. Calder,* Asst. Atty. Gen., and *Parnell Black,* of Salt Lake City, for the State.

TRUEMAN, District Judge.

Appellants were convicted of maintaining a common nuisance in violation of Section 195, Chapter 49, Laws of Utah 1937, in the District Court of Salt Lake County, before a jury.

Each appellant, except Pete Cayias, was sentenced by the Court to pay a fine of $200, or, in default of payment of such fine, to serve a term of sixty days in the Salt Lake County jail. The appellant Pete Cayias, was sentenced under the name of P. C. Cayias to pay a fine of $500, and also to serve 180 days in the Salt Lake County jail. Each appellant appeals from the judgment of conviction and sentence imposed upon him, and all appellants appeal from the order of the court denying their joint motion for a new trial.

Appellants have jointly and severally assigned fifty-two errors claimed to have occurred in the trial. They admit the same legal propositions are involved in a number of instances. They have condensed their argument within the limits of six broad grounds set forth in their brief.

The court will consider and dispose of all the errors claimed under classifications which the opinion will reflect.

*Sufficiency of Title of Amendatory Statute Amending Existing Session Laws under the Constitution of Utah.*

Section 195 of Chapter 49, Laws of Utah 1937, is an act amendatory of Section 195, Chapter 43, Laws of Utah 1935, which, unless otherwise indicated, we will hereafter refer to under an abbreviated designation as the Liquor Control Act of 1935 as amended in 1937, or as Section 195, or as the Liquor Control Act, etc.

The only difference in Section 195 in the 1935 and in the 1937 Laws is, namely: The 1937 Law omits the words *"any other"* as shown on the second line of the 1935 Act, and the 1937 Law omits the phrase *"contrary to the provisions of this act"* as shown on the sixth and seventh lines of the 1935 Act.

This court is committed to the rule laid down in the case of *Edler* v. *Edwards*, 34 Utah 13, 95 P. 367. In that case the court held the whole title was contained in ■ an amendatory act in the following quoted words:

" 'An act to amend section * * * Revised Statutes of Utah * * * as amended by chapter * * * and section * * *.'

"* * * and the statement of the contents of the sections to be amended being a mere explanation, and not a restriction of the amendment to any particular part of the sections, left any part of them open to amendment under the general title * * *."

In that case it was held:

"Amendatory Acts. If an amendatory act contains matter which might appropriately have been incorporated in the original act under its title, and identifies the original act by its title and declares the purpose to amend or supplement it, the provision of Const. art. 6, § 23, that no bill shall be passed containing more than one subject, which shall be clearly expressed in its title, is sufficiently satisfied."

The foregoing quotations are from the syllabi of the case of *Edler* v. *Edwards*, 34 Utah 13, 95 P. 367, and reflect the law announced in the opinion.

*Expression in Title of Subject of Act.*

Section 23 of Article VI of the Constitution of Utah provides:

"Except general appropriation bills, and bills for the codification and general revision of laws, no bill shall be passed containing more than one subject, *which shall be clearly expressed in its title."* (Italics added.)

Appellants claim Section 195, Chapter 49, Laws of Utah 1937, is unconstitutional. Their attack suggests two questions each of which is as follows:

(a) Whether title to Section 195 of the 1937 amendatory act is sufficient to sustain the said Act as against an attack as to its constitutionality.

(b) Whether, appellants have any standing here to question the constitutionality of the entire act if Section 195 is constitutional:

We concede appellants' right to question the constitutionality of Section 195, Chapter 49, Laws of Utah 1937, as the first suggested question presents.

The title of Chapter 43, Laws of Utah 1935, provided for penalties for violations thereof. This is particularly true of Section 195 of said act. The same penalty is provided for the violation of the amendatory act, as was provided in the original act. There was no amendment affecting the penalty. But, if the penalty had been amended, such penalty, being a subject matter incorporated in the original act, under the original title of the existing law, was a matter appropriate to be included in the amendatory act.

The title of an act amendatory of a law, in force and effect at the time of the enactment of the amendatory act, giving the number of the section of the original law designated to be amended, is sufficient notice to the legislature and to the public as reasonably to lead to an inquiry into the body of the bill to ascertain what changes are proposed in the original or existing law; and any-

thing germane to the general subject, expressed in the title of the original existing law, or that could have been included in the original and existing law under its general title may be included in any subsequent act amendatory of the then existing law.

The constitutional provision is for a practical purpose and it is not a technical restriction on the legislature. That practical purpose is to inform the legislature and the public what legislation is proposed, and a title is sufficient that will lead to an inquiry into the body of the act to ascertain changes proposed in the original and existing law.

The relevant part of the title to Chapter 49, Laws of Utah 1937, as the same affects Section 195, gave notice as follows:

"An Act amending Sections * * * 195 * * * Chapter 43, Laws of Utah, 1935."

This is sufficient. Under this title Section 195 may be amended to cover any provision germane to the 1935 Act under its title.

The question of the penalty was a matter germane to the original and amendatory act.

Therefore, the contention that *Section 195, Chapter 43, Laws of Utah 1935, as amended by Chapter 49, Laws of Utah 1937, violates Article VI, Section 23 of the Constitution of Utah,* we decide adversely to the appellants.

### Constitutionality of Entire 1937 Amendatory Act.

Appellants erroneously base their contention on our second suggested question on the holding of this court in the case of *Riggins* v. *District Court,* 89 Utah 183, 51 P. 2d 645. We held in that case the 1935 Liquor Control Act as a whole is constitutional. We again affirm our holding in that case insofar as it pertains to the act as a whole.

An entire statute will not be declared invalid at the instance of persons convicted under Section 195 of the Liquor Control Act of 1935 as amended in 1937, when such persons attacking said law are not prejudiced or concerned by the enforcement or operation of the other provisions of the act. This, of course, would affect the parts of the law in which they have an interest.

The appellants have found consolation in this language used by the court in the Riggins case: We quote from pages 11 and 12 of Appellants' brief:

"So, also, an act which contains two or more subjects, only one of which is expressed in its title, is void only as to the subject not included in the title. 79 Am. St. Rep. 456. It is only where a bill contains two separate subjects, both of which are expressed in its title, that the entire act must fail."

But the appellants were not prosecuted under or convicted on any provision of the amendatory act, except the provisions of Section 195 which we, under the first suggested question, hold, in this opinion, is not vulnerable to their attack, and their rights are not affected by the other provisions of said act.

In the case of *Riggins* v. *District Court*, 89 Utah 183, 51 P. 2d 645, the act known as the "Liquor Control Act of 1935" (Chap. 43, Laws of Utah 1935) was construed and found by this court to be constitutional. The "1937 Act" is amendatory of the "1935 Act."

After our decision in the Riggins case, an attack was made on Section 189 in the Lyte case, *Lyte* v. *District Court of Salt Lake County*, 90 Utah 369, 61 P. 2d 1259, which section was held unconstitutional in that case. That holding appears to be the basis for this attack. Our reason for holding Section 189 unconstitutional in the Lyte case is not present in Section 195 of either the amended or amendatory act. Even if other sections of the amendatory act of 1937 are unconstitutional, the question of the constitutionality of other sections would not invalidate Section 195 in view of our holding the act constitutional as a whole in

the Riggins case, and our specific holding in this case that Section 195 of the 1937 amendatory act is constitutional.

Therefore, appellants' contention of the invalidity of the entire 1937 amendatory act of the Liquor Control Act of 1935 must fail. And we will not consider the constitutionality of other sections of the "1937 Act" in which the appellants are not injuriously affected, because the court will not listen to an objection made as to the constitutionality of an act by parties whose rights are not specifically affected.

This court is committed to the rule that an attack on the validity of a statute cannot be made by parties whose interests have not been, and are not about to be, prejudiced by the operation of the statute. *State ex rel. Johnson* v. *Alexander*, 87 Utah 376, 49 P. 2d 408; *Utah Mfrs.' Ass'n* v. *Stewart, etc., et al.*, 82 Utah 198, 23 P. 2d 229.

We therefore, pass to appellants' further question, namely:

*Whether the Utah Liquor Control Act as set forth in Section 195 of Chapter 43, Laws of Utah 1935 as amended by Chapter 49, Laws of Utah 1937, which defines and prescribes a punishment for a "common nuisance," is a special or private law.*

The act is claimed to be invalid under sub-sections 5 and 18 of Section 26 of Article VI of the Constitution of Utah, which provide that the legislature is prohibited from enacting any private or special laws in the following cases:

Sub-section 5, "Punishing crimes and misdemeanors"
Sub-section 18, "* * * In all cases where a general law can be applicable, no special law shall be enacted. * * *"

Appellants' question may be further stated from the following quotation from page 17 of Appellants' brief:

"The legislature has attempted, by special legislation to stigmatize the same act [meaning "Nuisance"] with two *distinct penalties;* one a misdemeanor, and the other an indictable misdemeanor leaving

to 'the whim or caprice of the pleader,' the procedure or practice to be followed in two similar cases. This was condemned by this court in the case of *Lyte* v. *District Court of Salt Lake County*, 90 Utah 369, 61 P. 2d 1259." (Italics added.)

See also the same case, and decision on petition for rehearing. *Lyte* v. *District Court of Salt Lake County et al.*, 90 Utah 377, 62 P. 2d 1117.

As a basis for an analysis of this question it is necessary to have a clear definition of the distinction between a "general law" and a "special law."

The adjudicated case of *King* v. *Com. ex rel. Smith*, 194 Ky. 143, 238 S. W. 373, 22 A. L. R. 535, defines a "general and special law" and we quote these definitions approvingly, and cite the further treatment of the ▮ subject under the title "Statutes" 25 R. C. L. Par. 65, Pages 813 and 814, as a basis for our conclusion.

The definitions are as follows:

"Constitutional law—what are general laws. Laws which apply to and operate uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to themselves in the matters covered by the laws in question, are general and not special. (See 25 R. C. L. 814.)

"Definition—special and local law. Special legislation is such as relates either to particular persons, places, or things, or to persons, places, or things which, though not particularized, are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied, while a local law is one whose operation is confined within territorial limits, other than those of the whole state or any properly constituted class or locality therein. (See 25 R. C. L. 813, 814.)"

The legislature had plenary power to enact the legislation, the subject matters covered by Section 195, as defined and punished in Section 195 of both the amended and amendatory acts, and such legislation is general and not special. *King* v. *Com. ex rel. Smith*, 194 Ky. 143, 238 S. W. 373, 22 A. L. R. 535.

No precedent was established by the Lyte case from which it can be logically argued that Section 195, Chapter

43, Laws of Utah 1935, as amended by Section 195, Chapter 49, Laws of Utah 1937, may be deemed unconstitutional under sub-sections 5 and 18 of Section 26 of Article VI of the Constitution, because of other so-called "nuisance" statutes.

Many statutes define so-called "nuisances"; and it will serve no useful purpose to single them out and distinguish them from the crime denounced by Section 195, and defined in our law as "Common Nuisance."

There are certain fundamental criminal acts, common to the laws of God and man, called alike by a common name by the law of all civilized nations. There are other statutory regulations of the type of sumptuary laws, made unlawful by statutes, which may, or may not be common to the laws of other jurisdictions, the name and the element of which may be similar or different in the other jurisdictions. It is not the name that classifies and defines the wrong to be regulated, but it is the act made unlawful by the statute, by whatever name designated in the statutes.

This court construed in the Lyte case the provisions of Section 189 of Chapter 43, Laws of Utah 1935, which defined what may be known as "Persistent Violator Statute." Section 189 was limited and confined to the Liquor Control Act, and the court held there was no necessity or propriety that does not equally apply to those accused of committing offenses against other acts, and, to that extent Section 189 was a "special law," and in conflict with Sections 105-21-31 and 105-21-32 of Chapter 118, Laws of Utah 1935, which was the reason for our decision but such is not the case here. Section 195 is not a fanciful, capricious, arbitrary and unnatural classification of an unlawful act.

Section 195 defines and punishes a substantive crime. The law operates uniformly through the entire territorial limits of the State of Utah and all persons, places, or things offending its provisions are subject to prosecution under its terms.

Appellants' further contention on this point, as shown on pages 13 and 14 of their brief, is as follows:

"The classification made by Section 195 is arbitrary and unreasonable insofar as the legislature affixes to it a punishment more drastic than the punishment already provided for the maintenance of a public nuisance."

Appellants cite Section 103-41-5 of the 1933 Revised General Statutes in justification for such claim. That section is as follows:

"Penalty. Every person who maintains or commits any public nuisance, the punishment for which is not otherwise prescribed, or who willfully omits to perform any legal duty relating to the removal of a public nuisance, is guilty of a misdemeanor."

It is apparent from the language used that even this section recognizes other and different punishments may be provided even for so-called "Nuisances."

It has been generally held under the 14th Amendment to the Constitution of the United States, U. S. C. A., that in the administration of criminal justice, no one shall be subjected for the same offense to any greater or different punishment than that to which others of the same class are subjected. But, all so-called "nuisances" are not the same offenses, and, in fact, are not related offenses.

And, under the Federal Constitution, the identical crime may be punished differently where the difference in punishment is based on some classification, which has been made by the law, and different punishments have been provided for the same crime on account of the age or sex of the offender, and such laws have been generally held valid under the Federal Constitution. See the annotated case *In re Dunkerton*, 104 Kan. 481, 179 P. 347, 3 A. L. R. 1611.

Furthermore, under the Penal Code of Utah it is recognized by Section 103-1-16, Revised Statutes of 1933, that different punishments may be provided for misdemeanors.

"Punishments for Misdemeanor. Except in cases where a different punishment is prescribed by law, every offense declared to be a

misdemeanor is punishable by imprisonment in a county jail not exceeding six months or by a fine in any sum less than $300, or by both. * * *"

In Utah, as elsewhere, there are numerous misdemeanors where the punishment is different. The Constitution does not require that there shall be a standard punishment for all crimes, whether misdemeanors or felonies, so long as no one shall be subjected to different punishment for the same offense. The common nuisance defined by Section 195 of the Liquor Control Act is by law defined and made an indictable misdemeanor. It was within the plenary power of the legislature to so define and provide punishment for this crime.

It must be apparent from an examination of Section 195 of the Liquor Control Act of 1935, as amended in 1937, that the offense there defined is not the same nor a related offense defined under the title "Nuisances" under Chapter 41 of the Penal Code; and is not in any sense a special or private law, and that appellants' claim on this point must be denied.

We, therefore, pass to appellants' further question which may be stated from the following quotation from page 14 of Appellants' brief:

"* * * The unlawful sale of liquor is already penalized by Section 114 of Chapter 43, Session Laws of Utah, 1935 and made a misdemeanor by Section 149 of the same chapter. The distinction is artificial, capricious, and without reason. * * *" (Italics added.)

One of Appellants' arguments on the point is as follows: We quote from page 14 of Appellants' brief:

"* * * As a matter of fact, the thing that creates the common nuisance so far as the liquor control act is concerned is the unlawful sale of liquor * * *"

We contrast this statement with appellants' argument on pages 29 and 30 of their brief.

We quote as follows:

"Section 195 condemns not the sale of liquor but the maintenance of. the property upon which the liquor is sold."

While proof of a sale is competent evidence to establish the crime charged in the information, proof of a single sale will not establish the corpus delicti of a common nuisance as defined by Section 195 of the Liquor Control Act of 1935, as amended in 1937. Appellants recognize the distinction.

We quote again from their brief on page 29 and 30 as follows:

"The gravamen of the offense is the maintenance of room or building in which alcoholic beverages were unlawfully sold."

"Section 195 condemns not the sale of liquor but the maintenance of the property upon which the liquor is sold."

Criminal cases are replete with different statutes defining crimes containing some common elements and some different elements. It cannot be logically urged that such statutes were designed, used, or could be used, for the regulation of the formal steps in a criminal action which is the basis for the decision in the Lyte case. Upon this subject we quote from 8 Ruling Case Law, Title: Criminal Law, Section 135, Page 149 as follows:

"135. Single Act Violating Different Statutes of same Jurisdiction. —A single act may be an offense against two statutes, and, if each statute requires proof of an additional act which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. * * * A conviction or acquittal in such case under either statute would be no bar to a conviction under the other, for the accused would not be twice in jeopardy for one offense, but only once in jeopardy for each offense."

Appellants object to proof of sales made on the premises described in the information prior to December 1, 1937, the date of the alleged commission of the crime charged in the information.

This question being associated with the question of the difference between the two statutory offenses, namely: (a) an unlawful sale of alcoholic beverages under Section 114, and (b) a common nuisance as defined in Section 195 of the Liquor Control Act of 1935, as amended in 1937, may be considered here.

One crime does not prove another, nor tend to prove another, unless there is such a relation between them that proof of one tends to prove the other.

The proof of sales prior to December 1, 1937, tends to prove the reputation of the place as to the sale of intoxicating liquor, which may be shown by any direct and positive proof of the precise point, but, also, tends to show a joint operation of act and intent. 8 R. C. L. page 201, Par. 197, Criminal Law. *People* v. *Mutchler*, 309 Ill. 207, 140 N. E. 820, 35 A. L. R. 339.

The corpus delicti must be proved before the accused could be convicted of the offense charged.

It was necessary in this case for the prosecution to prove a crime had been committed, but it was not necessary to establish the fact by evidence different from that which showed that the premises were in fact used by the accused prior to the specific violation charged in the information. While in many crimes the evidence of the corpus delicti may be established by proof independent of the parties accused, in many others, if not most criminal cases, the evidence offered to prove the corpus delicti tends also to show the guilt of the accused. *State* v. *Sullivan*, 34 Idaho 68, 199 P. 647, 17 A. L. R. 902.

Where the testimony shows the general reputation of the place as a place where a common nuisance is maintained it is then competent to show the individual participation of each defendant, and the act of each defendant may be given in evidence.

From what has been said the difference between a single sale and a common nuisance is apparent; the gist of the

latter offense is pointed out by the appellants themselves as follows, viz.:

"The gravamen of the offense is the maintenance of room or building in which alcoholic beverages were unlawfully sold."

Proof that the place is frequented by persons habitually violating the liquor laws, or proof that the premises in fact were used in violation of Section 195 of the Liquor Control Act of 1935, as amended in 1937, was competent evidence as tending to show the reputation of the place.

In the case of *Bunch* v. *State*, 53 Okl. Cr. 430, 12 P. 2d 704, the charge was maintaining a public nuisance; the principal proof was two sales on the premises; the case was reversed on failure of the evidence to establish the corpus delicti.

The case is illustrative of the difference in proof necessary to establish the crime defined in Section 114 of Chapter 43, Laws of Utah 1935, and the crime defined in Section 195 of Chapter 43, Laws of Utah 1935, as amended by Chapter 49, Laws of Utah 1937. And as pointed out in Ruling Case Law, the crime defined as a common nuisance under the Liquor Control Act requires proof of some additional fact.

The information alleges the commission of the crime charged as of December 1, 1937. The reasoning in the case of *Strada* v. *United States*, 9 Cir., 281 F. 143, is particularly pertinent. We quote from this decision as reflected on page 86 of Respondent's brief as follows:

"The testimony complained of tends to establish an unlawful status, not limited in duration to the precise time of the occurrences related, but of a more or less permanent character. The continuity of wrongdoing implied in the charge of maintaining a nuisance may sufficiently appear from the nature and circumstances of a single transaction. *Lewinsohn* v. *United States* (C. C. A. 7), 278 F. 421, 425. So here, from the sales made by the defendant in person on September 30th, and those made the following day by an employee, and others made within the period charged, there is a natural inference of 'keeping' and

'selling' continuously before and throughout the entire period, all within the defendant's general knowledge and with his approval and participation."

Section 195 of the Liquor Control Act of 1935 as amended in 1937 provides that any person who maintains or assists in maintaining,

"Any room, house, building, boat, vehicle, structure or place where alcoholic beverages are manufactured, sold, kept, bartered, stored or given away, or used in violation of this act, or where persons resort for the drinking of alcoholic beverages, and all alcoholic beverages, packages, equipment or other property kept or used in maintaining the same, are hereby declared to be common nuisances * * *."

The corpus delicti may be proved by evidence showing (1) that the premises were used in violation of Section 195 of the Liquor Control Act of 1935 as amended in 1937; and, (2) that the defendant maintained or assisted in maintaining the place; and, (3) that the place was a place where the public resort.

We, therefore, hold adversely to appellants' contentions upon these questions as above discussed and now pass to the question of the constitutionality of Section 183, Chapter 43, Laws of Utah 1935.

The statute reads as follows:

"Records of Interal Revenue Collector Evidence. A copy of entries made in the records of the United States internal revenue collector, certified by him or a duly qualified notary public, showing the payment of the United States internal revenue special tax for the manufacture or sale of intoxicating liquors, shall be prima facie evidence in the courts of this state of such manufacture or sale by the party named therein within the period set forth in such record."

It is contended that Section 183 of the Statutes is in violation of subsection 6 of Section 26 of Article VI of the Constitution of Utah.

It will be noticed that the certificate is to the effect that the individuals named as Pete Sakos—Pete Cayias—and Chris Parris paid a special tax as a retail liquor dealer at

the premises designated at "Park Club" located at 432 West Third South Street, Salt Lake City, Utah, and in the information it is alleged the common nuisance was committed at the "Park Club," located at 432 West Third South Street, Salt Lake City, Utah, which is the same address.

Independent of any statute, the original record of the payment of this tax would be admissible in evidence on the trial of such a crime as charged in this information, as tending to show that the place itself was licensed by the Federal Government as a place where retail liquor could be sold without violating the Federal Statutes by the individual named.

In this case the record was properly certified by the custodian which complies with the provisions of Section 104-47-13, subsection 9, Revised Statutes of Utah 1933, made applicable to criminal cases by Section 105-45-2, Revised Statutes of Utah 1933.

As we have stated above this court is committed to the rule that an attack on the validity of a statute can not be made by parties whose interests have not been, and are not about to be, prejudiced by the operation of the statute.

The certificate being certified by the officer who was the custodian thereof made it admissible for showing intent, or proprietorship.

This being true the appellants will not be heard to attack the validity of Section 183, Chapter 43, Laws of Utah 1935, and, the constitutionality of the statute not being necessary to determine appellants' rights, we expressly refrain from passing thereon.

It cannot be said, that a person who has paid a federal tax, as a retail liquor dealer, at a designated address, with knowledge that he may be confronted with proof of that isolated fact, can complain of such evidence being used against him as tending to establish the maintenance of a common nuisance at the place at which the federal tax has been paid for that particular privilege; and such evidence is competent to show the reputation of

the place as tending to establish proof that said premises in fact were used for the purpose for which said tax was paid to the Federal Government. And such proof is competent evidence against a person named in the certificate and charged with maintaining such common nuisance, as tending to show their connection with the common nuisance.

### Documentary Evidence

We now consider certain documentary evidence pertaining to purchases by appellants of liquor in large quantities from State Liquor Stores and package agencies, and other documentary evidence relative to licenses, etc.

Applications made to the Corporation of Salt Lake City for the privilege of conducting a cigar and tobacco business and soft drink business, respectively, at 432 West 3rd South Street in Salt Lake City, Utah were introduced in evidence. Exhibit "W" is application No. 1467 and is signed Pete Sakos by Pete Cayias, and Exhibit "V" is No. 99 and is signed Pete Sakos-Pete Cayias. These exhibits were admitted in evidence over the objection of appellants.

We quote from page 26 of Appellants' brief:

"The documents did not tend to prove nor to disprove any of the matters in issue."

With appellants we disagree:

Proof of a license issued by a competent authority under a valid law or ordinance creates a presumption that the person to whom such license is issued is in charge ▄ of the premises described in such license for the purpose for which the license was issued.

As has been pointed out the prosecution had the burden of proving that the premises known as 432 West 3rd South Street in Salt Lake City, Utah, was a place where persons resort for the drinking of alcoholic beverages in violation of Section 195 of the Liquor Control Act of 1935 as amended in 1937, and issuance of a license to conduct ▄ a business at that place of whatever character is a fact founded on common experience that persons who pro-

cure licenses to conduct businesses are either in possession of or exercise some control over the premises where the business is to be conducted.

A presumption is defined to be an inference as to the existence of one fact from the existence of some other fact founded upon a previous experience of their connection, and as pointed out in Underwood's Criminal Evidence, Fourth Edition, Chapter 2; Circumstantial Evidence, Par. 15, Page 16, from which we quote:

"Whenever it is possible the criminal will endeavor to perform his nefarious deeds in secrecy, and where no eye-witnesses are present to behold him. So he will choose the time and occasion which are most favorable to concealment, and sedulous scheme to render detection impossible. Circumstantial evidence alone is enough to support a verdict of guilty of the most heinous crime, provided the jury believe beyond a reasonable doubt that the accused is guilty upon the evidence, and this can never be when the evidence is entirely consistent with innocence."

And this court is committed to the rule of presumption that an application for registration of an automobile is substantial evidence that the person who made the application is the owner thereof. *Ferguson* v. *Reynolds*, 52 Utah 583, 176 P. 267. See note annotated case 103 A. L. R. 138, citing *Ferguson* v. *Reynolds*.

And in criminal law such inferences need not be only necessary ones as it is sufficient if they are logical. *Commonwealth* v. *Merrick*, 255 Mass. 510, 152 N. E. 377.

From what we have said it is apparent that the question of the documentary evidence pertaining to purchases by the defendants from Liquor Stores and package agencies of unusually large purchases of liquor was competent circumstantial evidence, and under the proofs produced was consistent with guilt and not entirely inconsistent with innocence.

The jury had all of the facts before them, and this evi-

dence as pointed out by the Respondent was pregnant with circumstances full of evidentiary value.

We now pass to appellants' question which may be stated as follows:

*Were the Comments of the Trial Judge upon Which error is Assigned Improper?*

To better understand the question involved we quote from the pertinent parts of the dialogue which is:

"Mr. Gustin: Now, we move to strike the answer of the witness to the effect that he ordered and paid on that day for two drinks of whiskey on the grounds heretofore stated, and on the additional ground that under the statute it would appear that the witness also should be charged with a crime, and, therefore, is an accomplice.

"The Court: The motion is not well taken. This witness, by his testimony thus far, is an employee of the Utah Liquor Control Commission. We have had many cases on that point. As to the other objection indicated, the motion to strike is denied.

"Mr. Gustin: We desire to assign as prejudicial error the remarks of the Court to the effect that what this witness has done is proper law enforcement, on the grounds that it is a matter of commenting on evidence and assuming something not within the prerogative of the Court; and we ask for an order of mistrial and that the jury be discharged." Tr. pp. 116-119; Abs. pp. 23, 24.

Appellants contend that the foregoing remarks of the trial judge offends against Section 1052 of Hyatt on Trials. We have no observations, comments or criticisms to make upon the fundamental academic statements by which ■ that author treats the subject under discussion. Appellants cite no other authority other than *State* v. *Gleason,* 86 Utah 26, 40 P. 2d 222, wherein it is broadly held:

"Criminal law * * * Trial judge should not express or otherwise indicate opinion as to witness' credibility or defendant's guilt; such matters being exclusively for jury."

The facts in the Gleason case are not in any manner similar to the facts in this case; the procedure in the Gleason case has no similarity to the procedure in this case.

The law announced in the Gleason case is no different from the accepted general rule as reflected in American trial practice.

There are hundreds of cases on this question and the decision of this court on this point is fundamentally sound; however, many of the cases are predicated upon statutes regulating the prerogative of the trial judge in ruling on the objection.

*The Question Is Whether the Court by These Remarks Commented at All on the Evidence*

Here is what the Judge said:

"The witness, by his testimony thus far, is an employee of the Utah Liquor Control Commission."

Section 201 of Chapter 43, Laws of Utah 1935, provides:

"Nothing in this act shall be construed as prohibiting any person from purchasing alcoholic beverages contrary to the provisions of this act when acting as the agent of the authorities charged with the enforcement of this act in the detection and conviction of violators thereof."

The statement of the trial court was an accurate statement of the law. The trial court correctly overruled the objection.

We call attention to the annotated case of *State* v. *Baldwin,* 178 N. C. 687, 100 S. E. 348, 10 A. L. R. 1112 and notes beginning on page 1116. Many subsequent cases may be found on this point in the A. L. R. Blue Book of Supplemental decisions keyed to 10 A. L. R. page 1116.

We have held in the Gleason case that a trial judge is within his right in asking questions for the purpose of eliciting the truth or to clear up an obscurity. The question then is, if the trial judge can clear up a fact, can he not also clear up a question of law?

Nothing in the ruling of the court indicated to the jury the opinion of the court as to the guilt of the appellants, or the weight or sufficiency of the evidence. In fact the

court should in a case of this character in its general instructions to the jury instruct that a person employed under the provisions of Section 201 of Chapter 43, Laws of Utah 1935, in the enforcement of the Liquor Control Act in the detection and conviction of violators thereof, who purchases alcoholic beverages, does not purchase such beverages contrary to the laws of Utah, but under the authority of such laws.

Under our practice as we pointed out in the Gleason case the trial judge is not a mere referee or moderator.

Appellants were not required to enter discussion of this question before a jury. The Judge's remarks were not addressed to the jury. The remark has nothing to do with the character of the witness or the value of his testimony insofar as the trial judge was concerned. Appellants should have asked the court to excuse the jury for the purpose of bringing before the court a matter of law, the discussion of which was not within the concern of the jury to hear. Appellants should have argued their questions of law to the court in the absence of the jury. The remark of the trial judge was not a comment upon the weight of the evidence.

In Georgia it is provided by statute that it shall be unlawful for a trial judge in any case,

"during its progress or in his charge to the jury, to express or intimate his opinion, as to what has or has not been proved, or as to the guilt of the accused." See Note 10 A. L. R. 1124, Par. VI.

It is generally held under this statute a judge may give his reason for admitting or excluding evidence, though in so doing he may refer to the issue or the state of the proof.

Appellants' counsel contend in oral agrument before this court that the trial judge should simply rule on the admissibility of the evidence, and say nothing more. This appears to be the law but not the rule in Texas under a statute:

"In ruling upon the admissibility of evidence the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it be admissible. Nor

shall he at any stage of the proceedings previous to return of verdict make any remark calculated to convey to the jury his opinion of the case." See Note 10 A. L. R. 1127, Par. VII.

But, even under this rule a remark by the trial judge in admitting testimony, "I think it is part of the res gestae" has been held no ground for reversal. That statement is indicative of the competency and weight of the evidence. In the case before us the statement of the trial judge at best is indicative of the competency of the witness.

The Notes referred to above give a fair parallel comparison of the holdings on this question in states where there are statutes expressly prohibiting the comment of trial judges on the weight or sufficiency of the evidence.

We are of the opinion that the language of the trial judge in the case before us was not a comment on the evidence, but a comment on the competency of the witness. In Utah trial judges are not moderators or referees and may express themselves on all questions of law in a trial whether arising upon exception or otherwise, and they are not required to rule on a question categorically as provided in Texas, but may within reasonable limitations assign their reason for their rulings; and where their reasoning is based upon an expression of legal opinion, or a proposition of law no reversible error is committed.

It would have been misconduct for appellants to argue to the jury that the witness, the subject of the court's comment, was a violator of the law and an accomplice under such testimony.

We have examined the record and find appellants were in every particular given a fair trial. We have heretofore commented on proof sufficient to establish corpus delicti of the crime of maintaining a common nuisance.

All persons are principals who act together in the commission of a common nuisance. Section 103-1-43, Revised Statutes of Utah 1933, provides as follows:

"Principals Defined. All persons concerned in the commission of a crime, either felony or misdemeanor, whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission, * * * are principals in any crime so committed."

The fact that one of several knowingly promoting and participating in carrying out a common nuisance in some respect in subordination to others and is to profit less than the others, or not at all, by the consummation of the scheme does not render him less a principal. The ██ █ trial court heard the evidence, and there is ample evidence from which the jury could find the appellants and each of them guilty of the crime charged in the information.

Finding no reversible error in the record the judgment of conviction is affirmed as against each appellant.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.

WOLFE, J., being disqualified, did not participate herein.