**UTAH FARM BUREAU INSURANCE COMPANY, a Utah Corporation, Plaintiff and Respondent,**

v.

**The UTAH INSURANCE GUARANTY ASSOCIATION et al., Defendants and Appellants.**

No. 14855.

Supreme Court of Utah.

May 6, 1977.

752

Vernon B. Romney, Atty. Gen., William G. Gibbs, Special Asst. Atty. Gen., Salt Lake City, for defendants-appellants.

James P. Cowley, Gregory B. Monson, Salt Lake City, for plaintiff-respondent.

MAUGHAN, Justice:

Before us is a judgment declaring the Utah Insurance Guaranty Association Act unconstitutional. We reverse, and declare the Act constitutional. Costs to defendant.

Plaintiff, an insurance company, brought a declaratory judgment action against defendant. Defendant is a legislatively created, nonprofit, unincorporated, legal entity. The action challenged the constitutionality of the Utah Insurance Guaranty Association Act, Chapter 40, Title 31, U.C.A.1953, as enacted 1971. Both parties moved for summary judgment, which was granted to plaintiff, and defendant appeals.

The trial court found the act unconstitutional on the following grounds:

1) The act created a corporation by a special act, in violation of Article XII, Sec. 1, Constitution of Utah.

2) The act discriminated against financially sound insurers in a manner not reasonably related or necessary to the objectives of the act and was therefore a denial of equal protection of the law.

3) The act discriminated against financially sound insurers in a manner which deprived them of property without substantive due process of law.

4) The act led to arbitrary and inequitable treatment of insurers because of its improper delegation of authority with ambiguous standards in violation of Article VI, Sec. 1, Constitution of Utah.

5) The act was a special or private act where a general law could be applicable, in

violation of Article VI, Sec. 26, Constitution of Utah.

Sec. 31–40–2 sets forth the legislative purpose of the act:

. . . to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

To accomplish this purpose, all insurers, with the exception of those set forth in Sec. 3, are required, as a condition of their authority to transact business in Utah, to be a member of defendant, Sec. 6. The members of the association select its board of directors, subject to the approval of the commissioner of insurance, Sec. 7.

To provide for payment to insureds of insolvent insurers, in the statutory amounts set forth in the act, together with the other expenses of the association, an assessment of the member may be made, not exceeding two per cent of the member insurer's net direct written premiums for the preceding calendar year. There are three accounts for which assessments may be made (1) Workmen's Compensation (2) Automobile (3) All other insurance covered by the Act. A member can be assessed only for premiums on the kind of insurance he writes; and then only when an underwriter of that kind of insurance is the cause of the implementation of the provisions of the act.

Furthermore,

The association may exempt or defer, in whole or in part, the assessment of any member insurer, if the assessment would cause the member insurer's financial statement to reflect amounts of capital or surplus less than the minimum amounts required for a certificate of authority by any jurisdiction in which the member insurer is authorized to transact insurance. Sec. 8(1)(c).

The subdivisions of Sec. 8, set forth the specific powers granted to the association including other acts necessary or proper to effectuate the purpose of the act. Section 9 permits the association to establish a plan of operation and establish certain procedures required by the act, all must be submitted to the insurance commissioner for approval. If the association fails to submit a suitable plan of operation or any necessary amendments, the insurance commissioner, after notice and hearing, is required to adopt and promulgate such reasonable rules as are necessary or advisable to effectuate the provisions of the act. Under Sec. 9(3)(g), any rule promulgated must "provide that any member insurer aggrieved by any final action or decision of the association may appeal to the commissioner within thirty days after the action or decision."

Is the Utah Insurance Guaranty Association Act a general law or a special act, in violation of Art. VI, Sec. 26[1] and Article XII, Sec. 1[2] Constitution of Utah?

In two jurisdictions, having similar constitutional provisions, the courts have reached opposite conclusions, as to the constitutionality of similar legislative enactments.[3] This court makes every reasonable presumption in favor of constitutionality and will not nullify a legislative enactment unless it is clearly and expressly prohibited by the Constitution. In seeking the correct application of statutes and constitutional

---

1. "No private or special law shall be enacted where a general law can be applicable."

2. "Corporations may be formed under general laws, but shall not be created by special acts. . . ." Art. XII, § 4, provides: "The term 'Corporation,' as used in this article, shall be construed to include all associations and joint-stock companies having any powers or privileges of corporations not possessed by individuals or partnerships, and all corporations shall have the right to sue, and shall be subject to be sued, in all courts, in like cases as natural persons."

3. Upheld in *Aetna Life Insurance Co. v. Washington Life And Disability Insurance Guaranty Ass'n,* 83 Wash.2d 523, 520 P.2d 162 (1974); Stricken in *Fireman's Fund Insurance Co. v. Arizona Insurance Guaranty Association,* 112 Ariz. 7, 536 P.2d 695 (1975).

provisions, this court looks to the circumstances, which brought them into being and the purposes sought to be accomplished.[4]

One of the purposes of the constitutional provisions prohibiting the creation or formation of corporations by special acts was to remove the danger of favoritism and corruption in the creation of corporations.

. . . Others have said that the object of the prohibition is not to prevent the legislature from legislating on a special subject, even though it may affect corporations, nor to prevent corporations from obtaining exclusive powers, privileges and franchises, but to prevent the legislature from granting corporate powers, privileges and franchises to one set of applicants and refusing exactly the same corporate powers, privileges and franchises to another set of applicants.[5]

In *State v. Kallas*[6] this court set forth the general definitions of general and special laws. A general law applies to and operates uniformly upon all members of any class of persons, places, or things requiring legislation peculiar to themselves in the matters covered by the laws in question. On the other hand, special legislation relates either to particular persons, places, or things or to persons, places, or things which, though not particularized, are separated by any method of selection from the whole class to which the law might, but for such legislation, be applied.

In *People v. Western Fruit Growers*[7] the court stated a law is general when it applies equally to all persons embraced in a class founded upon some natural, intrinsic, or constitutional distinction. It is special legislation if it confers particular privileges or imposes peculiar disabilities, or burdensome conditions in the exercise of a common right; upon a class of persons arbitrarily selected, from the general body of those who stand in precisely the same relation to the subject of the law. The constitutional prohibition of special legislation does not preclude legislative classification, but only requires the classification to be reasonable.

. . . The fact that an act authorizing the formation of corporations or conferring powers or privileges upon corporations does not apply to every person or corporation in the state does not render it special, if it has a uniform operation as to all persons similarly situated. In other words, the fact that an act classifies persons who may form a corporation, or the purposes for which corporations may be formed, or the corporations which shall enjoy powers or privileges granted, does not render it a special act, if the classification is reasonable, and if the act applies to all persons or corporations falling within the particular classes.[8]

In 2 Sutherland Statutory Construction (4th Ed.), Sec. 40.18, p. 219, the following principle is stated:

Acts conferring franchises, privileges, and immunities are general and not special legislation unless there is an arbitrary standard imposed as to those who may avail themselves of the privileges.

Regulatory statutes relating to persons and corporations are not invalid as special legislation if they are an exercise of the police power for the protection of the public welfare. Acts that apply alike to all in the same situation with no arbitrary discriminations are a proper exercise of the police power and are general acts.

This principle is illustrated in *O'Malley v. Florida Insurance Guaranty Association*.[9] There it was urged legislation similar to our own was unconstitutional as special legislation. The court stated the association was a public corporation, of statewide authority, created for public purposes connected with

---

4. *Trade Commission v. Skaggs Drug Centers, Inc.*, 21 Utah 2d 431, 446 P.2d 958 (1968).

5. 1 Fletcher Cyclopedia Corporations (1974 Rev. Vol.) § 169, p. 622.

6. 97 Utah 492, 505, 94 P.2d 414 (1939).

7. 22 Cal.2d 494, 140 P.2d 13, 19–20 (1943).

8. 1 Fletcher Cyclopedia Corporations (1974 Rev. Vol.), § 173, p. 631.

9. Fla., 257 So.2d 9 (1971).

the administration of government. A private corporation has no official duties or concern with the affairs of government. It is voluntarily organized and is not bound to perform any act solely for government benefit. Its primary object is the personal emolument of its stockholders.

The court observed, in contrast, the business of a public corporation is ordinarily stipulated by the legislature to fill a public need without private profit to any organizers or stockholders. Its function is to promote the public welfare, and often it implements governmental regulations within the state's police power, i. e., it is organized for the benefit of the public.

The court further said the Guaranty Association is a public or quasi-public corporation. It is a legislatively declared "mechanism" to aid and benefit numerous citizens; many of whom comply with state requirements in obtaining casualty and other insurance coverage; but have suffered loss of the insurance protection they obtained, because of the insolvency of their insurers.

The court ruled the enactment, by reason of its described nature and purpose, is a general law of statewide application in its operative effect; and not a local or special law.[10]

In *Aetna Life Insurance Company v. Washington Life And Disability Insurance Guaranty Association*,[11] the court cited authority setting forth the distinctions between a general and special law. The court stated whether a law be deemed general or special depends upon whether the classification is appropriate. If the only limitation contained in the law be a legitimate classification of its object, it is a general law. It found the legislative classifications in the Guaranty Act had a legitimate and reasonable basis and, therefore, held the act was not a special act and granted no corporate powers or privileges by special act to any entity.

■ From the foregoing we are compelled to conclude Chapt. 40, Title 31, is not a special act in violation of Article XII, Sec. 1 and Article VI, Sec. 26, Constitution of Utah.

The trial court ruled the act denied equal protection of the law on the ground Sec. 8(1)(c) authorizes the association to exempt or defer, in whole or in part, the assessment of a member. This could occur if the assessment would cause the member's financial statement to reflect amounts of capital or surplus less than the minimum amounts required for a certificate of authority by any jurisdiction in which the member is authorized to transact an insurance business. Plaintiff successfully urged the effect of this provision was to grant a preferred position to a marginal insurer, at the expense of a financially sound insurer.

In *Abrahamsen v. Board of Review of Industrial Commission*,[12] this court distilled and set forth the principles of *State v. Mason*[13] as follows:

"A classification is never unreasonable or arbitrary in its inclusion or exclusion features so long as there is some basis for the differentiation between classes or subject matters included as compared to those excluded from its operation, provid-

---

10. See *State ex rel. Warren v. Nusbaum*, 59 Wis.2d 391, 208 N.W.2d 780 (1973), wherein the court observed it was not the intention of the legislature to create a corporation in the ordinary sense. It was its intention to grant those corporate powers essential to the Authority's performance, in improving and otherwise promoting the health, welfare and prosperity of the people of the state. The purpose of the constitutional prohibition against special legislation was to insure legislation, which would promote the general welfare and further statewide interest, as opposed to private concerns. The constitutional prohibition was not intended to deny the legislature the authority to grant limited corporate powers, to the entities it created, to promote a public and state purpose. If the challenged legislation does not involve the promotion of private or local interests (as condemned by the constitution); but promotes a legitimate governmental and statewide purpose, as declared by the legislature, it is not objectionable as either a special or private law.

11. See note 3, *supra*.

12. 3 Utah 2d 289, 292, 283 P.2d 213, 215 (1955).

13. 94 Utah 501, 78 P.2d 920, 117 A.L.R. 330 (1938).

ed the differentiation bears a reasonable relation to the purposes to be accomplished by the act. . . .

"In order to see whether the excluded classes or transactions are on a different basis than those included, we must look at the purpose of the act. The objects and purposes of a law present the touchstone for determining proper and improper classifications. . . .

"It is only where some persons or transactions excluded from the operation of the law are as to the subject matter of the law in no differentiable class from those included in its operation that the law is discriminatory in the sense of being arbitrary and unconstitutional. If a reasonable basis to differentiate those included from those excluded from its operation can be found, it must be held constitutional."

 In the subject Act the legislature expressed its purpose in section 2. Included there was an intention "to assist in the detection and prevention of insurer insolvencies." The authorization to defer or to exempt an assessment where a member's capital would be impaired fulfills the cited legislative purpose. It would be ironical if an act designed to ameliorate the conditions caused by an insurer's insolvency contributed to the insolvencies of other insurers. The differentiation of Section 8(1)(c) bears a reasonable relation to the purposes to be accomplished by the act; therefore, the classification is not arbitrary and unreasonable, or a denial of equal protection of the law.

 Plaintiff was successful in urging the act deprived the financially strong insurer of property, without substantive due process of law. With this we cannot agree.

In *California State Automobile Association Inter-Insurance Bureau v. Maloney*[14] the court described a case involving a mandatory statute requiring automobile insurers to subscribe to a state plan; as one in

which the state requires, in the public interest, each member of a business to assume a pro rata share of a burden which modern conditions have made incident to the business. It found the statute analogous to a state law assessing each state bank, for the creation of a depositors' guaranty fund.

The court stated the police power extends to all the great public needs and may be utilized in aid of what the legislative judgment deems necessary to the public welfare. When the business of insurance is involved, the government has long had a special relation. The court said:

. . . Here, as in the banking field, the power of the state is broad enough to take over the whole business, leaving no part for private enterprise. [Citations omitted.] The state may therefore hold its hand on conditions that local needs be serviced by the business. . . .[15]

Although appellant's business may be less prosperous as a result of the regulation the court held such diminution in value has never amounted to the dignity of a taking, in the constitutional sense.

 Finally, plaintiff was successful in urging the act constituted an improper delegation of legislative authority; in violation of Article VI, Sec. 1, Constitution of Utah. Plaintiff cited *Revne v. Trade Commission*.[16] There this court held the procedure, under a law enacted as a health and safety measure, in the interest of the public; constituted an improper delegation of legislative authority. It did so, because the interest of the public was subjected to the control of a small economic class.

It is plaintiff's claim the insurance commissioner does not have the power to block certain actions of the association. For example, the authority to interfere with the granting of exemptions or deferrals of assessments, Sec. 31–40–8(1)(c), or the authority of the board "in good faith" to request an examination of a member in a financial

14. 341 U.S. 105, 71 S.Ct. 601, 95 L.Ed. 788 (1951).

15. At p. 110 of 341 U.S., at p. 604 of 71 S.Ct.

16. 113 Utah 155, 192 P.2d 563 (1948).

condition hazardous to its policyholders or to the public. Sec. 31–40–13(2).

This is not so. The cited statutes set forth specific standards within which the board and the association must operate; all are directed towards the public good and the expressed public purposes of the act. Furthermore, there are procedural safeguards to protect against arbitrary action. Under Sec. 31–40–9(3)(g) a member insurer aggrieved by any final action or decision of the association may appeal to the commission. Under Sec. 31–40–9(1)(b) the commissioner may promulgate suitable amendments to the rules; as they become necessary or advisable, to effectuate the provisions of the act.

■ Plaintiff further urged there was an improper delegation of legislative authority, because the basic standard governing the powers and duties of the association and the commissioner was ambiguous. Specifically, it is claimed the term "insolvency" is ambiguous, and yet it is the integral standard upon which the entire act is based.

Section 31–40–5(5)(b) provides, an "insolvent insurer" means an insurer "determined to be insolvent by a court of competent jurisdiction." Thus the key provision of the act, which triggers many of the consequences, is initially subject to judicial review.

In *Lloyd A. Fry Co. v. Utah Air Conservation Committee*,[17] this court observed the law of delegation would be strengthened if the courts were to deemphasize statutory standards and to emphasize procedural safeguards. The inclusion of certain words in a statute which a court can denominate a legislative standard is not a particularly good protection against arbitrariness. Effective protections are hearings, legislative supervision and judicial review.

The act under review is replete with standards in regard to the authority conferred on the association and board. They are endowed with a degree of discretion in fulfilling the purposes of the act, but there is review to correct any abuses. The insur-ance commissioner, with his extensive statutory powers, as well as his particularized knowledge and skills, can protect the public interest, while permitting the members of a regulated business to participate in an effective manner, in decisions affecting their vital interests.

WILKINS, J., concurs.

ELLETT, C. J., and HALL, J., concur in the main opinion and also in the concurring opinion of CROCKETT, J.

CROCKETT, Justice (concurring).

■ I am in general agreement with what is said in the main opinion concerning the constitutionality of the act. But, for the purpose of stating my views thereon as succinctly and clearly as possible, I offer these comments: The furnishing of insurance is so widespread and generally accepted that it is properly regarded as an essential service in which the public interest is so involved that it is a legitimate subject of regulation in the interest of the general welfare. See Insurance, Title 31, U.C.A. 1953.

The classifications provided in the Act seem to harmonize with its purposes. As to the burdens plaintiff complains of: there is hardly any regulation which is not purposed to produce some benefit and which does not impose some corresponding burden, but the burdens provided for in this act are intended to be imposed equally upon all within the same class.

■ The argument is made that the plaintiff and other insurance companies who are more efficient and more solvent will be penalized by bearing burdens for those that are less so. Such an argument could be made by the members of many groups, such as utilities for example, or even by taxpayers, that they have less children to be educated, or fire proof or burglary proof houses and are made to pay more than their aliquot share of the expenses for the various public services such as schools, police and fire protection. The argument is

17. Utah, 545 P.2d 495, 501 (1975).

758

without merit. There is no impermissible discrimination or inequality of treatment so long as the burden is imposed equally upon all within the same class and all are afforded equal opportunity to benefit from the service, even though the amount of benefit actually received may vary considerably.

In harmony with what has been said, I concur in upholding the constitutionality of the statute.