THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. FRANCES BENNET, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. FRANCES BENNET, Appellant, v. WALTER J. FLOOD, as Warden of the Nassau County Jail, Respondent.

Second Department, July 5, 1972.

*James J. McDonough* (*Matthew Muraskin* of counsel), for appellant.

*William Cahn, District Attorney* (*Joseph A. DeMaro* of counsel), for respondents.

HOPKINS, J. The question before us is whether on sentencing the court must impose a prison term on a narcotic addict without considering the other alternatives open in cases of other offenders, simply because the Narcotic Addiction Control Commission (NACC) for reasons arising out of its own internal management would not at the time accept involuntary criminal certifications of addicts. We hold that imprisonment is not the only course which the sentencing court must follow and that the usual sentencing options provided by law are available.

Charged with criminally selling a dangerous drug in the third degree (four counts) and criminally possessing a dangerous drug in the fourth degree (four counts), the appellant pleaded guilty on September 7, 1971 to criminally selling a dangerous drug in the fourth degree (a class D felony) in satisfaction of the indictment. At the time of the plea she admitted she had used narcotics. At the time of sentencing on October 14, 1971

the report of the jail physician was that the appellant was an addict and she admitted she was.

The appellant's counsel asked that the County Court impose a probationary term on the appellant with the condition that she enter and receive treatment at Topic House (an institution performing rehabilitative services for narcotic addicts), noting that Topic House had agreed to accept her. Counsel also observed that NACC, due to monetary limitations, "cannot take any patients on an involuntary basis on a criminal certification."

The court, though saying that it was sympathetic to the appellant, imposed a prison term on her. It determined that under the law it could not place her on probation, since incarceration of a narcotic addict was mandatory, and that it was compelled to impose a prison term, since NACC had refused to accept her.

The appellant promptly sued out a writ of habeas corpus, claiming that, had she not been certified an addict, she would have been eligible for a conditional discharge, probation or a sentence in the county jail. Her writ was dismissed by the Special Term in the Supreme Court on the ground that the sentencing court could only impose a prison term under the statutory provisions, though in the opinion of the Special Term the statutory provisions were harsh under the setting of the appellant's circumstances and the Legislature should review and amend the mandatory language.

The appellant appeals from both judgments.

In 1966 the Legislature created NACC and authorized it to "formulate a comprehensive plan for the long range development * * * of adequate services and facilities for the prevention and control of narcotic addiction" and to "establish and operate rehabilitation centers * * * for the care, custody, treatment, aftercare and rehabilitation of narcotic addicts certified to the care and custody of the commission" (L. 1966, ch. 192; Mental Hygiene Law, § 204, subds. 1, 9). The purpose of the program was legislatively declared to be the "compulsory treatment of narcotic addicts [which] is essential to the protection and promotion of the health and welfare of the inhabitants of the state as well as to discourage the violation of laws relating to the sale, possession and use of narcotics and other dangerous drugs" (Mental Hygiene Law, § 200, subd. 2). In the legislative judgment, such a program was required to meet the problems caused by the disease of drug addiction and the program provided by the legislation was "designed to assist the rehabilitation of narcotic addicts," both those not accused of crime and

those "accused or convicted of crimes" (Mental Hygiene Law, § 200, subds. 1, 3).

To this end the statute provides for certification of narcotic addicts to the care and custody of NACC. In the case of a defendant convicted of crime, the certification is to be made by the court after a medical examination and a finding of addiction (Mental Hygiene Law, § 208). The court, if the defendant is convicted of a felony (as here), has the discretion either to impose an indeterminate prison term upon him or to certify him to the care and custody of NACC (Mental Hygiene Law, § 208, subd. 4, par. b). However, the certification is not effective unless NACC consents to it (Mental Hygiene Law, § 210-a).

Section 60.15 of the Penal Law provides that a defendant found to be a narcotic addict under section 208 of the Mental Hygiene Law shall be sentenced, in the discretion of the court, either by certification to NACC or to an indeterminate prison term. A defendant not found to be a narcotic addict may be sentenced, in the discretion of the court, either to imprisonment, a reformatory term, probation or conditional discharge (Penal Law, § 60.10).

Both the County Court, which sentenced the appellant, and the Special Term, in disposing of the writ of habeas corpus, considered themselves blocked from the use of the alternatives to imprisonment allowed by section 60.10 of the Penal Law, because section 60.15 of the Penal Law restricts the sentence of a narcotic addict either to certification to NACC or to imprisonment, and believed their choice was further narrowed, by the universal refusal of NACC to consent to certification, to imprisonment—that is, to no choice at all.[1]

The constitutionality of the provisions of the Narcotics Control Act of 1966 was challenged in 1969 by convicted addicts in *People* v. *Fuller* (24 N Y 2d 292). Holding that "the basic premise of the narcotic control program is and constitutionally must be a rehabilitative one" (p. 301), the Court of Appeals said (p. 303): "The record is barren, however, of any evi-

---

1. It is noted that the original language of section 210-a of the Mental Hygiene Law prevented the certification of an addict without the consent of NACC (L. 1967, ch. 384). In 1970 it was amended to allow the court to make a certification, but to prevent the certification from becoming effective without NACC consent (L. 1970, ch. 126). The amendment was not intended to reach the instant issue (see memorandum of State Department of Mental Hygiene, 2 McKinney's 1970 Session Laws of N. Y., p. 2839). Moreover, chapter 50 of the Laws of 1971 (State Purposes Budget) provides (pp. 161–162) that no narcotic addict may be certified to NACC without its prior consent until March 31, 1972. This language reverts to the original effect of section 210-a. We do not consider the differences in language to have any critical application on the issue here.

dence that the detention compelled under the statute is in effect punitive punishment, that there is no chance of cure and that this program is a sham and cover up for the putting away of addicts for a few more years. If it were, society would have to find some other means of dealing with the problem. The substantive aspect of the program is entitled to a presumption of constitutionality, at least and until a record is established otherwise.''

We derive from both the declarations of legislative intent and the construction which *Fuller* attributed to the statute the conclusion that the program aimed at the serious problems of narcotic addiction was not contemplated to be intermittent in duration or sporadic in application — that, indeed, it represented an over-all effort by the State toward the arrest of a spreading disease in society of ever-increasing proportions. Hence, it was not conceived as a part of the legislative scheme that NACC would for reasons not connected with the goals of the program close its operations to all addictive offenders certified by the court, no matter how beneficial the rehabilitative process would be to at least some of them. The language of the statute must therefore be interpreted in the light of the objectives of the statute and in aid of, and not to thwart, the exercise of the judicial discretion designed to fit the sentence to the offender and the crime (cf. Penal Law, § 65.00, subd. 1; § 65.05, subd. 1; § 65.10, subd. 2; § 65.20, subd. 1).

When, therefore, NACC declined to accept any convicted addict, however worthy of treatment, the effect of its action was to put into operation the provisions of the statute permitting the court to use any of the options suitable to the sentencing of the appellant (Penal Law, § 60.10). This effect becomes clear if the statutory provisions relating to addictive misdemeanants are weighed.

Paragraph a of subdivision 4 of section 208 of the Mental Hygiene Law requires that a defendant convicted of a misdemeanor and found to be an addict shall be certified to NACC — the court has no discretion to impose a sentence of imprisonment, as in the case of a felon. If, then, it were to be decided that section 60.15 of the Penal Law restricts the sentencing power of the court, there would be no alternatives open, for the statute merely repeats that the only disposition which may be made is certification to NACC.[2] Hence, the true character of section

2. The purpose of section 60.15 of the Penal Law, according to one commentator, is simply to tie in the sentencing provisions of the Mental Hygiene Law with the Penal Law (Practice Commentary on section 60.15 in McKinney's Cons. Laws of N. Y., Book 39, p. 98).

60.15 as a precautionary duplication of the sentencing provisions of section 208 of the Mental Hygiene Law emerges. We must then read the language of section 210-a of the Mental Hygiene Law to apply only to a refusal of NACC to consent to certification when the refusal is based on an evaluation of the addict as amenable to rehabilitation — that is, on a personal appraisal — and not to an absolute refusal to consider any certified addict because of lack of fiscal resources or facilities. In the event of universal rejection of certifications by NACC, the other pertinent provisions of the Penal Law apart from section 60.15 thereof must be deemed to apply (cf. *People ex rel. Brinthaupt v. Duhl,* 68 Misc 2d 391).

If we do not interpret the statute in this light, it runs the risk of unconstitutionality. We would in effect be declaring that addictive felons during the period of time that NACC suspends the acceptance of certifications must be imprisoned without the possibility of treatment as a condition of probation, whereas addictive felons before and after the period of the suspension would receive the benefit of the rehabilitative process that the program of NACC offers. Moreover, we would also be approving the practice which NACC adopted at one time — during the period in which it did not fully function — of accepting a certain number of placements among the addicts certified to it.[3] Thus, whether an addict would receive the benefit of certification to NACC would depend on the time of his certification or even on the chance that the quota set by NACC had not been exceeded.

Such a procedure grounded on the aleatory uncertainties of quotas or time schedules, or on distinctions having no rational basis as between individuals, does not comply with the constitutional guarantee of equal protection of the laws. Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made (*Walters v. City of St. Louis,* 347 U. S. 231, 237). Since *Yick Wo v. Hopkins* (118 U. S. 356), the discriminatory enforcement of the law has been condemned (see comment, 61 Col. L. Rev. 1103, 1106). Though the Legislature may constitutionally deal with convicted narcotic addicts as a class differently from other criminals (*People v. Fuller,* 24 N Y 2d 292, *supra*), addicts

---

3. A numerical limitation, or a quota, was announced by NACC, effective August 1, 1971, with respect to those addicts eligible for certification under sections 206, 209 and 210 of the Mental Hygiene Law. The blanket suspension of all in-take of certifications had previously been made effective April 30, 1971.

similarly situated cannot be divided by administrative fiat or, indeed, by the unequal application of the law (cf. *Rinaldi* v. *Yeager,* 384 U. S. 305, 309; *Baxstrom* v. *Herold,* 383 U. S. 107, 111). We perceive no reason of constitutional stature which can justify difference in treatment of persons of similar standing. Clearly, fiscal inadequacy, in the face of the equal protection of the laws, is no reason at all (cf. *People ex rel. Smith* v. *La Vallee,* 29 A D 2d 248, 250; *People ex rel. Kaganovitch* v. *Wilkins,* 23 A D 2d 178; *People ex rel. Ceschini* v. *Warden,* 30 A D 2d 649).

We should, of course, avoid a construction which would imperil the validity of the statute (*People* v. *Finkelstein,* 9 N Y 2d 342, 345; *People* v. *Barber,* 289 N. Y. 378, 385). We avoid that construction here by holding that, when NACC is forced by financial pressures to refrain from carrying out the manifest and salutary intent of the statute, the statute must be construed to authorize the court to apply any of the sentencing options which are appropriate under the circumstances to the convicted addict.

Accordingly, the judgment of conviction should be reversed, on the law, and the appellant remanded to the County Court for resentence in accordance with the views stated herein. This makes the appeal from the judgment in the habeas corpus proceeding academic and therefore that appeal should be dismissed, without costs.

RABIN, P. J., MUNDER, BRENNAN and BENJAMIN, JJ., concur.

Judgment of the County Court, Nassau County, rendered October 14, 1971 in the first above-entitled matter, reversed, on the law, and appellant remanded to the County Court for resentence in accordance with the opinion rendered herewith.

Appeal from judgment of the Supreme Court, Nassau County, entered October 20, 1971 in the second above-entitled matter, dismissed, without costs.