Chief Judge Breitel (dissenting).
The mandatory sentence of life imprisonment, really lifetime parole, imposed in this case is unconscionable and barbaric because of the gross inequality of treatment of like persons involved in the identical crime. Since the earliest conscious evolution of justice in western society, the dominating principle has been that of equality of treatment of like persons similarly situated, a principle at the root of any rational system of justice (Aristotle, Ethica Nicomachea, [Ross ed], book V, pars 1129a, 1131a; see Friedmann, Legal Theory [5th ed], at p 416; Bodenheimer, Treatise on Justice, § 10, at p 84; Hart, Concept of Law, pp 153-163, especially pp 155, 158-159; Cahn, Sense of Injustice, pp 14-15; Patón, Jurisprudence [3d ed], at p 95). That principle is ravished in this case by force of a mandatory statute.
Defendant, a 37-year-old woman with no prior convictions, was a "millhand” in a heroin processing "mill”. She and 14 other participants in the operation were indicted for acting in concert to possess over four pounds of heroin seized in a police *699 raid on the "mill” (criminal possession of a dangerous drug in the first degree, Penal Law, former § 220.23).
After reversal of a hearing court’s order suppressing the heroin, 12 of the codefendants, including eight "millhands”, three "lieutenants” and the "principal” of the operation, were permitted, as the statute law then allowed, to plead guilty to lesser included offenses. The "principal” received 8 1/3 to 25 years; the "lieutenants” received indeterminate sentences of 5 years, the other "millhands”, whose crimes were identical to that committed by defendant, received indeterminate sentences of 3 years.
Although offered the same opportunity to plead as the other "millhands”, defendant, claiming innocence, instead exercised her right to trial. Upon her conviction by a jury, the sentencing court, against its conscience and judgment, but because it was mandated by statute, sentenced defendant to life imprisonment, with a minimum of 15 years (Penal Law, § 70.00, subd 2, par [a]; subd 3, par [a]).
Moved by the recommendations of the trial court, the District Attorney noted for his prosecutorial zeal, and the Appellate Division, all of whom believed the sentence to be excessively harsh, the Governor commuted defendant’s sentence to 3 years, 3 months and 10 days to life, the minimum term expiring on January 5, 1976. The commutation has a number of conditions, most notably, that defendant remain on parole for life. Of course, in considering the constitutionality of punishments, the máximums must be examined (People v Broadie, 37 NY2d 100, 111). Here, the maximum was unaffected by the commutation.
I would suggest that the revulsion felt by the trial court, the prosecutor, the Appellate Division, and the Governor, at this gross inequality of sentencing is shared by all of the members of this court, except that the majority is unable to wrest itself from what it accepts as the command of a statute. But there is a Constitution, a law higher than that of the Legislature and the courts.
Defendant contends that, under the circumstances, the mandatory life sentence, as applied to her, constituted cruel and unusual punishment in violation of constitutional limitations (NY Const, art I, § 5; US Const, 8th Amdt).
It is of critical importance to recognize that defendant was not convicted under the statutory scheme mandating life *700 imprisonment sustained in People v Broadie (37 NY2d 100, supra). The difference is that, under the current statutory scheme, involved in the Broadie case, a defendant is permitted to plead to a lesser included offense, but only to one carrying a mandatory life sentence (CPL 220.10, subd 6, par [a]). Under the former statutory scheme, applicable in this case, however, a defendant was permitted to plehd to a lesser included offense carrying less than a mandatory life sentence (see CPL, former 220.10, subd 4).
Thus, unlike the sentences upheld in the Broadie case (supra), this "mandatory” life sentence was not "mandatory” in all circumstances, in the sense that all those charged with the commission of serious drug offenses would inevitably receive a life sentence upon conviction. Instead, the former statute permitted a defendant to plead to a lesser included offense and thereby escape the "mandatory” life sentence. While undoubtedly intended as an ameliorative of the harsh "mandatory” punishment, the net effect of it in this case was to penalize defendant for insisting upon her constitutional right to trial, a penalty in this case of the magnitude of the difference between an indeterminate term of three years and possible life imprisonment.
The Broadie case (supra), in sustaining the harsher statutory scheme which succeeded the already harsh statutory scheme under which defendant was sentenced, presaged instances where the application of a legislated system of mandatory sentences would violate constitutional limitations. Thus, it was said (p 119): "This is not to say that in some rare case on its particular facts it may not be found that the statutes have been unconstitutionally applied (cf. Furman v Georgia, 408 US 238, 460-461 [Powell, J., dissenting]).” This is such a case.
Implicit in the constitutional proscription of cruel and unusual punishments is the principle that the punishment should fit the crime and the offender (see People v Broadie, 37 NY2d 100, 125 et seq., supra). This is the obverse of the ancient principle of equality, that is, that like offenders who commit identical offenses should be punished equally (cf. Furman v Georgia, 408 US 238, 256-257, supra [Douglas, J., concurring], id., at pp 309-310 [Stewart, J., concurring]). Thus, a gross inequality of treatment among like defendants who have committed the identical crime would constitute cruel and unusual punishment.
*701 A like result is obtained by analysis of defendant’s sentence under the equal protection clauses of the State and Federal Constitutions (NY Const, art I, § 11; US Const, 14th Arndt). A statute is void as violative of equal protection of the laws, as applied, if it permits the imposition of different degrees of punishment for the same acts committed under the same circumstances by like persons (see Skinner v Oklahoma, 316 US 535, 541; People v Bennet, 39 AD2d 320, 325-326 [Hopkins, J.]; State v Zornes, 78 Wn 2d 9, 24-25; State v Pirkey, 203 Ore 697, 702-704; 16A CJS, Constitutional Law, § 564, at pp 529-530; cf. Williams v Illinois, 399 US 235, 243; People v Tennyson, 19 NY2d 573, 576; People v Saffore, 18 NY2d 101, 104; People v Gilbert, 72 Misc 2d 795, 799 [Kreindler, J.]; People v Turville, 51 Cal 2d 620, 638, cert den 360 US 939; State v Smith, 58 NJ 202, 206-207; State v Kallas, 97 Utah 492, 507). There is no rational basis justifying the gross disparity in the sentences in this case; indeed, the only basis would be the impermissible one of penalizing defendant for going to trial.
While justice and law may not be coextensive, and indeed they are not, a divergence too great is not tolerable or acceptable under constitutional limitations based on due process of law, equal protection of the law, and cruel and unusual punishment. Margin for discrepancy there may be between law and justice but not an ocean’s breadth justified only by adherence to the letter.
The only fact which distinguishes defendant from her fellow "millhands” is that she chose to stand trial. For this she undoubtedly merited a more severe sentence, but not one with a discrepancy as great as that imposed by command of the statute. Apart from a gross violation of the principle of equality, such a discrepancy could serve the purpose of discouraging an innocent person from standing trial (see United States v Stockwell, 472 F2d 1186, 1187, cert den 411 US 948; Scott v United States, 419 F2d 264, 269-272; cf. People v Michael G., 27 NY2d 79, 86-87). The risk would be too great. It is precisely analogous to the constitutionally impermissible practice of imposing a heavier sentence after a second trial simply to penalize a convicted defendant for successfully pursuing an appeal (see North Carolina v Pearce, 395 US 711, 723-725).
Defendant, a minor functionary, and perhaps an accidental one, in a commercial illegal drug enterprise, refused to plead and insisted on going to trial. She was impermissibly penal *702 ized for her decision by a mandatory maximum life sentence, originally with a minimum 15-year sentence, which she is entitled to have overturned as a matter of law, and not only by the grace of a clement Governor.
Accordingly, I dissent and vote to modify the order of the Appellate Division, vacate the sentence, and remit for resentencing to an indeterminate term of three years.
Judges Jasen, Gabrielli, Jones and Cooke concur in Per Curiam opinion; Chief Judge Breitel dissents and votes to modify in a separate opinion in which Judges Wachtler and Fuchsberg concur.
Order affirmed.