2005 UT 52

**WORKERS' COMPENSATION FUND,
a Utah quasi-public corporation,
Plaintiff and Appellee,**

v.

**STATE of Utah, a governmental entity,
Defendant and Appellant.**

No. 20040504.

Supreme Court of Utah.

Aug. 23, 2005.

Rehearing Denied Nov. 3, 2005.

David J. Jordan, Mark E. Hindley, Salt Lake City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Thom D. Roberts, Asst. Att'y Gen., Salt Lake City, for defendant.

James R. Black, Salt Lake City, for amici curiae Utah Manufacturers, Utah Trucking Association, Utah Food Industry.

WILKINS, Associate Chief Justice:

¶ 1 In this appeal we are asked to address the nature of the State of Utah's relationship with the Workers' Compensation Fund. Specifically, the State challenges a district court ruling which held that the "State of Utah has no ownership interest in the Workers' Compensation Fund or its assets other than as a policyholder." We affirm.

**BACKGROUND**

¶ 2 Utah's statutorily mandated workers' compensation system has existed for nearly a century. The progenitor of the present Workers' Compensation Fund ("WCF") came

into being in 1917 and was named the State Insurance Fund ("SIF"). Act of July 1, 1917, ch. 100, § 35, 1917 Utah Laws 306, 316. Throughout its existence, the purpose of workers' compensation in Utah has been to "(i) insure Utah employers against liability for compensation based on job-related accidental injuries ...; and (ii) assure payment of this compensation to Utah employees who are entitled to it." Utah Code Ann. § 31A–33–102(1)(b) (2003); cf. Ch. 100, § 35, 1917 Utah Laws at 316 (stating that SIF existed "for the purpose of insuring employers against liability for compensation under this Act, and of assuring to the persons entitled thereto the compensation provided by this Act"). Utah employers historically have been required by statute to provide such insurance either through the SIF, now WCF, or through some other insurer. Id. § 53, 1917 Utah Laws at 323; cf. Utah Code Ann. § 34A–2–201 (Supp.2004).

¶ 3 Notwithstanding this continuity in purpose, the Legislature has periodically modified the State's relationship with the workers' compensation system. While the State has always insured through the WCF, Ch. 100, § 59, 1917 Utah Laws at 325; cf. Utah Code Ann. § 34A–2–203 (2001), its involvement in, and authority over, the administration of workers' compensation insurance has evolved over time. As the latter aspect of this relationship is particularly pertinent to this appeal, we briefly recite the statutory history of workers' compensation insurance in Utah, focusing on the significant changes in its administrative apparatus.

I. HISTORY OF WORKERS' COMPENSATION INSURANCE IN UTAH

¶ 4 In 1917, the Legislature created the Industrial Commission of Utah and endowed it with the power, among other things, "[t]o administer and enforce all laws for the protection of life, health, safety and welfare of employe[e]s." Ch. 100, § 16(1), 1917 Utah Laws at 309. The SIF was created within the Industrial Commission for the purpose of "insuring employers against liability for compensation under this Act, and of assuring to the persons entitled thereto the compensation provided by this Act." Id. § 35, 1917

Utah Laws at 316. The SIF consisted of "all premiums and penalties received and paid into the fund," *id.*, and the state treasurer was designated to be the "custodian of the State insurance fund, and all disbursements therefrom [were to] be paid by him," *id.* § 46, 1917 Utah Laws at 320.

¶ 5 The SIF was to be "administered by the [Industrial] [C]ommission without liability on the part of the State beyond the amount of such fund." *Id.* § 35, 1917 Utah Laws at 316. The 1917 statute further stated that it was the "duty of the [Industrial] [C]ommission to conduct the business of the State insurance fund," *id.* § 36, 1917 Utah Laws at 317, and that the commission "is hereby vested with full authority over the said fund, and may do any and all things which are necessary or convenient in the administration thereof, or in connection with the insurance business to be carried on by it." *Id.* Such authority included the ability to sue and be sued on behalf of the SIF, *id.* § 38, 1917 Utah Laws at 317, and to make contracts of insurance, *id.* § 39, 1917 Utah Laws at 317.

¶ 6 In 1941, the Legislature transferred the administration of the SIF to the Commission of Finance. Act of July 1, 1941, ch. 16, sec. 1, § 42-2-3, 1941 Utah Laws 1st Spec. Sess. 46, 46. The status of the SIF and its place within the Industrial Commission statutes remained unchanged, except that the Finance Commission assumed the responsibilities of the Industrial Commission in administering the SIF. These duties included "conduct[ing] all business thereto appertaining and belonging," and being "vested with full authority over said fund." *Id.* With this change, the Finance Commission also acquired the ability to appoint, with the governor's approval, managers, attorneys, accountants, and "such other experts and assistants" as needed to assist in administering the business of the SIF. *Id.*

¶ 7 The Finance Commission's "full authority" over the SIF persisted until 1986, when the Legislature repealed and reenacted chapter three of title 35, entitled "Labor–Industrial Commission." *See* Insurance Recodification Amendments, ch. 204, § 279, 1986 Utah Laws 477, 626–28. Previously the stat-

ute describing the SIF, the new chapter three renamed the fund the "Workers' Compensation Fund of Utah." *Id.* sec. 279, § 35-3-2, 1986 Utah Laws at 626. While the fund still existed for the purpose of providing workers' compensation insurance and consisted of "all assets acquired from premiums and penalties which are paid into the fund," *id.*, authority over the fund shifted significantly.

¶ 8 First, authority to "manage and conduct the business and affairs of the fund" was transferred to the newly created director of the WCF. *Id.* sec. 279, § 35-3-6, 1986 Utah Laws at 626. This individual was to be appointed by the executive director of the Department of Administrative Services, and the management of the fund by the former was subject to the approval of the latter. *Id.* sec. 279, §§ 35-3-1, 35-3-6, 1986 Utah Laws at 626. Among the director's managerial powers were the ability to enter into workers' compensation insurance contracts, and, with the approval of the executive director, to employ attorneys, accountants, and other experts in managing the business of the WCF. *Id.* sec. 279, § 35-3-7(1), (8), 1986 Utah Laws at 626–27. These privileges, which were previously held by the state agency administering the fund, now belonged to the fund itself.

¶ 9 Furthermore, the State was explicitly prohibited from "us[ing] any assets of the fund for any purpose other than the operation of the fund." *Id.* sec. 279, § 35-3-4, 1986 Utah Laws at 626. However, the state treasurer was still the custodian over the fund's money and assets, *id.* sec. 279, § 35-3-13, 1986 Utah Laws at 627, and provided investment services for the fund subject to the State Money Management Act of 1974, *id.*, which governs the investment of "public funds," *see* Utah Code Ann. § 51-7-4 (1981) (current version at Utah Code Ann. § 51-7-4 (2002)). Additionally, while the State was still shielded from liability "for the expenses or debts of the fund," Ch. 204, sec. 279, § 35-3-4, 1986 Utah Laws at 626, the fund, for the first time, was described as a "legal entity [that] may sue and be sued in its own name," *id.* sec. 279, § 35-3-3, 1986 Utah Laws at 626.

¶ 10 In 1988, the Legislature again changed the administrative structure of the

WCF. It began by bifurcating the organizational apparatus of the WCF from its assets. Workers' Compensation Fund Amendments, ch. 56, sec. 5, § 35–3–2, 1988 Utah Laws 374, 375. The purpose of the WCF remained the same, *id.*, sec. 5, § 35–3–2(1), 1988 Utah Laws at 375, but a separate enterprise fund, called the Injury Fund, was created, which consisted of "all assets acquired from premiums and penalties paid into the Injury Fund," and was to be "maintained by the Workers' Compensation Fund," *id.* sec. 5, § 35–3–2(2), 1988 Utah Laws at 375. The State, under this dichotomous system, was still protected from liability for any expenses or debts of the WCF and was now prohibited from accessing the assets of the Injury Fund. *Id.* sec. 7, § 35–3–4(2), 1988 Utah Laws at 375.

¶ 11 The State's relationship to the WCF was also modified in other aspects. First, a board of directors was created, consisting of the executive director of the Department of Administrative Services and four other members appointed by the governor. *Id.* sec. 8, § 35–3–5(1), 1988 Utah Laws at 375. The duties of the board included the responsibility to "appoint a chief executive officer to administer" the fund, to "serve as investment trustees of the injury fund," and to perform other acts related to the policymaking and oversight of the WCF. *Id.* sec. 9, § 35–3–6(1), (5), (13), 1988 Utah Laws at 376.

¶ 12 The chief executive officer, in turn, was charged with "administer[ing] all operations of the [WCF] under the direction of the board." *Id.* sec. 10, § 35–3–7(1)(a), 1988 Utah Laws at 376. Among other things, this included entering into contracts for workers' compensation insurance, *id.* sec. 10, § 35–3–7(2)(a), 1988 Utah Laws at 377, and employing attorneys, accountants, and other specialists to assist in administering the fund, *id.* sec. 10, § 35–3–7(1)(m), 1988 Utah Laws at 376.

¶ 13 The chief executive was also responsible for investing the assets of the Injury Fund. *Id.* sec. 10, § 35–3–7(1)(f), 1988 Utah Laws at 376. Although these investments were to be conducted under the guidance of the board of directors, *id.*, unlike the state treasurer, who had previously been charged with investing the fund's assets in accordance with the Money Management Act, Ch. 204, sec. 279, § 35–3–13, 1986 Utah Laws at 627, the chief executive was now required to invest the fund's assets according to chapter 18 of Utah's Insurance Code, Ch. 56, sec. 10, § 35–3–7(f), 1988 Utah Laws at 376, which governs all insurers doing business in the State. *See* Utah Code Ann. § 31A–18–101 (1986) (current version at Utah Code Ann. 31A–18–101 (2003)).

¶ 14 In addition, the 1988 enactment defined the legal nature of the WCF. It stated that the WCF was

> a nonprofit, self-supporting, quasi-public corporation. It is an independent state agency and a body politic and corporate. It is a legal entity and may sue and be sued in its own name. All of its business and affairs shall be conducted in the name of the Workers' Compensation Fund of Utah.

Ch. 56, sec. 6, § 35–3–3, 1988 Utah Laws at 375. However, this language was modified two years later, when, in 1990, the Legislature deleted the language "an independent state agency and a body politic and corporate." Workers' Compensation Fund Amendments, ch. 24, sec. 3, § 35–3–3(1)(a), 1990 Utah Laws 132, 132.

¶ 15 Finally, the last decade has seen some significant changes in the State's relationship with the WCF. First, in 1996, the Legislature relocated the WCF from its historical position in title 35, entitled "Labor—Industrial Commission," to its present place in title 31A, entitled "Insurance Code." Act of Feb. 27, 1996, ch. 240, §§ 20–37, 1996 Utah Laws 893, 910–14. Second, a 2002 enactment defined the extent of the State's authority over the WCF that stemmed from the governor's ability to appoint its board of directors:

> (19) The requirement that the governor, with the consent of the Senate, appoint the directors of the Workers' Compensation Fund . . . does not:
>
> (a) remove from the board of directors the managerial, financial, or operational control of the Workers' Compensation Fund; [or]

(b) give to the state or the governor managerial, financial, or operational control of the Workers' Compensation Fund[.]

Workers' Compensation Insurance Related Amendments, ch. 186, sec. 2, § 31A–33–106(19), 2002 Utah Laws 675, 677.

## II. THE PRESENT DISPUTE

¶ 16 The dispute before us now covers the present nature of the WCF in its relationship with the State. It arose in October 2003, when the WCF filed suit in district court seeking a declaration that "the State has no ownership interest in the WCF or its assets other than as a policyholder." After the State filed its answer, WCF moved for summary judgment, and the State then moved to dismiss, or, in the alternative, for a judgment on the pleadings. After hearing arguments on the motions, the district court granted WCF's motion and denied those of the State.

¶ 17 In its decision, the district court held that "the State has no ownership in the WCF or its assets other than as a policyholder." The State now appeals, arguing that "[s]ince WCF was created by the State, the State exercises all the incidents of ownership over it, and there are no vested or ownership rights of the policyholders, the State owns and controls the WCF." For the reasons expressed below, we find the State's arguments unpersuasive and affirm the district court's grant of WCF's Motion for Summary Judgment.

## ANALYSIS

¶ 18 When a district court grants summary judgment to a party, it decides that the party is entitled to a favorable judgment as a matter of law. Utah R. Civ. P. 56(c). On appeal, therefore, we must determine whether the district court erred in its legal analysis, granting no deference to its conclusions and reviewing its holding for correctness. *Kouris v. Utah Highway Patrol*, 2003 UT 19, ¶ 5, 70 P.3d 72.

¶ 19 As stated above, the current Utah Code describes the WCF as "a nonprofit, quasi-public corporation," Utah Code Ann. § 31A–33–102(1) (2003), charged with "main-

tain[ing]" the Injury Fund, which consists of "the premiums, reserves, investment income, and any other funds administered by the [WCF]," *id.* § 31A–33–101(5). Section 31A–33–105 explains that "the state: (a) is not liable for the expenses, liabilities, or debts of … the Workers' Compensation Fund; … and (b) may not use any assets of the Injury Fund for any purpose." *Id.* § 31A–33–105(2). Furthermore, section 31A–33–106, entitled "Board of Directors— Status of the fund in relationship to the state," clarifies that the governor's ability to appoint the board of directors does not "give the state or the governor managerial, financial, or operational control" over the WCF. *Id.* § 31A–33–106(19).

¶ 20 Notwithstanding this statutory language, the State maintains that it "exercises all the incidents of ownership over [the WCF]" and that it "owns and controls the WCF." It supports this assertion with three arguments. First, it contends that the WCF is a "state governmental entity" because an earlier version of the WCF statute described it as an independent state agency, and to be otherwise would make it unconstitutional. Second, it asserts that the Injury Fund, an entity separate from the WCF, is a "public fund" and therefore owned by the State. Finally, the State contends that the WCF policyholders have no ownership interest in the WCF and the right to "control, use, lease, or to otherwise dispose of the assets" of the WCF can only be exercised by the State. Each of these arguments will be addressed in turn.

## I. THE WCF IS NOT A STATE AGENCY

¶ 21 The State claims that the WCF is a "state and governmental entity" for several reasons. First, the State makes much of earlier workers' compensation insurance statutes that are no longer in force. It argues that the WCF is the modern equivalent of the Industrial Commission of Utah, a state agency established in 1917 and charged with the responsibility, among other things, "to conduct the business of the State insurance fund." Act of July 1, 1917, ch. 100, § 36, 1917 Utah Laws 306, 317. According to the

State, since a state agency "conduct[ed] the business" of the insurance fund for much of its history, any apparatus established for conducting the State's workers' compensation business, under whatever title, must be a state agency, subject to the State's control like any other agency. As such, the State contends that the "independent state agency" description of the WCF, enacted in 1988 and deleted in 1990, not only reflected the true historical nature of the WCF but also projected its future status.

■ ¶ 22 However, arguing for the present validity of statutory language that has been deleted by the Legislature demonstrates a misunderstanding of the fundamental nature of the legislative process. As the creator of laws, a legislature constantly gives life to myriad legal requirements and concepts, but subsequent legislation may also take it away. Neither this court, nor any party, has the power to resurrect statutory language that has been repealed or significantly changed through proper amendment by the legislature.

¶ 23 As recounted above, the history of the WCF clearly demonstrates the Legislature's authority to decide that the level of the State's involvement in administering workers' compensation insurance that existed yesterday is not the same level desired today. In 1917, the Legislature vested a state agency, the Industrial Commission, with "full authority" to "conduct the business" of the then-SIF. *Id.* § 36, 1917 Utah Laws at 317. Now, however, the Legislature has seen fit to decide that, even though the State is involved in the creation of the board of directors to administer the WCF, this involvement does not give the State "managerial, financial, or operational control of [the WCF]." Utah Code Ann. § 31A–33–106(19)(b).

■ ¶ 24 Second, the State contends that the WCF could not have been created as a private corporation or a privately-owned corporation without violating the Utah Constitution. Article XII, section 1 of the Constitution states that "[c]orporations may be formed under general laws but may not be created by special acts." Utah Const. art. XII, § 1. The State argues that since the WCF was created as a corporation by a special act, and since we have held that the constitutional prohibition against corporations created by such acts only "concerns private corporations and not public corporations created by the legislature to serve public purposes," *Utah Tech. Fin. Corp. v. Wilkinson*, 723 P.2d 406, 415 (Utah 1986), the WCF, to exist legally, must be a public corporation, created for a public purpose.

■ ¶ 25 However, the State is only partially correct. The Legislature, within the bounds of article XII, section 1 of the Utah Constitution, may create a corporation that serves a public purpose while being private in ownership. In fact, such is the nature of quasi-public corporations in general and the WCF as a quasi-public corporation in particular. As defined by the Legislature, a quasi-public corporation is "an artificial person, private in ownership, individually created as a corporation by the state which has accepted from the state the grant of a franchise or contract involving the performance of a public purpose relating to the state or its citizens." Utah Code Ann. § 63E–1–102(8) (2004).

■ ¶ 26 Under the State's interpretation, all quasi-public corporations would violate article XII, section 1 of the Utah Constitution, since quasi-public corporations are "private in ownership," even though they are created for the "performance of a public purpose." However, we cannot adopt the rule that quasi-public corporations, because of their private ownership, violate our Constitution. Rather, the existence of such corporations coincides with our previous holding that the prohibition in article XII, section 1 primarily concerns the purpose to be served by the corporation created, not the notion of whether the legal entity is publicly or privately owned. *See Utah Farm Bureau Ins. Co. v. Utah Ins. Guar. Ass'n*, 564 P.2d 751, 755 n. 10 (Utah 1977).

¶ 27 In *Utah Farm Bureau Insurance Co.*, we considered whether the Utah Insurance Guaranty Association Act, which created a legal entity designed to guarantee payment to the insureds of insolvent insurers, Utah Code Ann. §§ 31–40–2, –6 (1974) (current version at Utah Code Ann. §§ 31A–28–102, –

106 (2003)), violated article XII, section 1 of the Utah Constitution. *Utah Farm Bureau Ins. Co.*, 564 P.2d at 753. To answer the question, we examined how similar provisions from other states' constitutions had been interpreted, and we aligned ourselves with the following rationale:

> The purpose of the constitutional prohibition against special legislation was to insure legislation, which would promote the general welfare and further statewide interest, as opposed to private concerns. The constitutional prohibition was not intended to deny the legislature the authority to grant limited corporate powers, to the entities it created, to promote a public and state purpose. If the challenged legislation does not involve the promotion of private or local interests (as condemned by the constitution); but promotes a legitimate governmental and statewide purpose, as declared by the legislature, it is not objectionable as either a special or private law.

*Id.* at 755 n. 10 (citing *State ex rel. Warren v. Nusbaum*, 59 Wis.2d 391, 208 N.W.2d 780, 812–13 (1973)).

¶ 28 Clearly the WCF has promoted "a legitimate governmental and statewide purpose," *id.*, by providing workers' compensation insurance to citizens of Utah. This purpose has not changed in its nearly ninety years of existence. Consequently, we hold that the WCF, as a quasi-public corporation, does not violate article XII, section 1 of the Utah Constitution, in spite of the fact that, as such a corporation, it is "private in ownership," Utah Code Ann. § 63E–1–102(8).

■ ¶ 29 The State contends that the statutory definition of a quasi-public corporation as "private in ownership" does not apply to the WCF because the Independent Entities Act, which created that definition in 2001, was enacted after the WCF was defined as a quasi-public corporation in 1988. For the Independent Entities Act definition of a quasi-public corporation to apply to the WCF, the State argues, the "Legislature must undertake a specific review and make various findings" about the WCF according to Utah Code section 63E–2–103, which provides guidelines for the Legislature in creating in-

dependent corporations. The State insists that since the Legislature has not performed this review of the WCF, the WCF is not a quasi-public corporation as understood by the Independent Entities Act definition, i.e., it is not "private in ownership," *id.*

¶ 30 However, the State's argument fails to account for the fact that in enacting the Independent Entities Act, the Legislature recognized the WCF among the list of independent entities already in existence. *Id.* § 63E–1–102(4)(b)(vi). As such, it is clear that the Legislature intended for the Act's definition of a quasi-public corporation as being private in ownership to apply to the WCF. In fact, there is no other category within the statute for the WCF to exist. As the WCF points out, according to the statutory classifications, independent entities exist as either independent state agencies or independent corporations, *id.* § 63E–1–102(4)(a), and independent corporations exist as either public corporations or quasi-public corporations, *id.* § 63E–2–106(1) (2004). Consequently, as a quasi-public corporation, the WCF cannot be classified properly as either a public corporation or an independent state agency, as the State suggests.

¶ 31 We hold that the WCF is "private in ownership" according to the definition of quasi-public corporation in the Independent Entities Act, *id.* § 63E–1–102(8), and that the State has no "managerial, financial, or operational control of [the WCF]," in spite of the governor's ability to appoint its board of directors, *id.* § 31A–33–106(19)(b), and in spite of the State's historical involvement in the WCF. Nevertheless, our decision does not prevent the Legislature from modifying the structure and management of the WCF or adjusting the level of the State's influence thereupon, as it sees fit. The historical precedent for such change is evident. We merely rule on the present nature of the relationship between the WCF and the State, and declare that the State has no ownership interest in the WCF.

## II. THE STATE DOES NOT OWN THE WCF'S ASSETS

■ ¶ 32 The State next argues that the Injury Fund, which consists of "the premi-

ums, reserves, investment income, and any other funds administered by the [WCF]," Utah Code Ann. § 31A–33–101(5) (2003), is a public fund, not owned by the WCF policyholders, but controlled by the State. However, such an assertion clearly contradicts current statutes and precedents from this court. Section 31A–33–105(b) of the WCF statute states that "[t]he state ... may not use any assets of the Injury Fund for any purpose." *Id.* § 31A–33–105(b) (2003). As telling as this statute is on the limited nature of the State's authority over the assets of the WCF, our prior pronouncements on the matter are even more precise on the issue of ownership of those assets.

¶ 33 Indeed, the assets of the fund have always belonged to the contributing employers and not to the State. In *Chez v. Industrial Commission,* we addressed whether a debt owing to the then-SIF was considered a debt owing to the State. 90 Utah 447, 62 P.2d 549, 549–50 (1936). To answer the question, it was necessary to "examine the nature of the State Insurance Fund and see what it really is." *Id.* at 550. We defined the State's involvement in the fund by "conclud[ing] that the State Insurance Fund, while a public fund in the sense of being administered by a public body, is not public money in the sense that it is money of the state to be used for and on behalf of the state for a state expenditure." *Id.* at 551. Consequently, we held that "[t]he fund is publicly administered, but its debtors are not debtors to the state. It belongs, not to the state, but to the contributing employers for their mutual benefit. It constitutes a pooling of risks under the auspices of the state." *Id.*

¶ 34 We have since affirmed *Chez's* holding that the assets of the WCF are owned by its policyholders and not by the State. *See Hansen v. Utah State Ret. Bd.,* 652 P.2d 1332, 1341 (Utah 1982) ("The State Insurance Fund operates essentially as a private insurance company; it receives no public moneys and pays its own administrative expenses from the premiums received. The moneys paid into the Fund do not belong to the State but in effect to the contributing employers."). We have also held that an appropriation of the WCF's assets by the State would consti-

tute a taking, for which due compensation ought to be made. *Gronning v. Smart,* 561 P.2d 690, 692 (Utah 1977). Accordingly, we conclude that these cases and the statute prohibiting the State's use of the fund's assets are sufficient authority to justify upholding the district court's decision that the State has no ownership interest in the WCF's assets.

### III. THE STATE HAS NO CONTROL OVER THE WCF OR ITS ASSETS

¶ 35 Finally, it is perhaps in tacit recognition of the clarity of the foregoing precedent that the State attempts to persuade us by arguing that the WCF policyholders "have no control or ownership interest in [the] WCF." However, this approach is flawed. The issue before us on appeal is the district court's ruling that the *State* has no ownership interest in the WCF or its assets other than as a policyholder. The State cannot establish its right to own the WCF or its assets merely by attempting to disprove the ownership rights of the WCF's policyholders. From the beginning, the State was faced with demonstrating to this court its right to own the WCF and its assets; but, as has been demonstrated above, there is no legal leg on which its position can properly stand.

### CONCLUSION

¶ 36 We affirm the district court's decision that the "State of Utah has no ownership interest in the Workers' Compensation Fund or its assets other than as a policyholder." As a quasi-public corporation, the WCF exists to serve an essential public purpose, providing workers' compensation insurance, all the while being private in ownership. Furthermore, apart from the Legislature's ability to modify its governing statutes, the State has no managerial, financial, or operational control of the WCF. The same is true for the WCF's assets, the Injury Fund; and we reaffirm our prior decisions, which have held that those assets belong to the WCF policyholders and not to the State.

¶ 37 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Judge EYRE concur in Associate Chief Justice WILKINS' opinion.

¶ 38 Having disqualified himself, Justice DURRANT does not participate herein; District Judge DONALD J. EYRE, JR., sat.